IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CSX TRANSPORTATION, INC,

        Plaintiff,

   v.                                       Civil Action 2:16-cv-557
                                             Judge James L. Graham
                                             Magistrate Judge Jolson

COLUMBUS DOWNTOWN
DEVELOPMENT CORPORATION,
et al.,

        Defendants.

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 159), and Defendants' Joint Motion to Amend Scheduling Order (Doc. 166). For the reasons that follow, those Motions are **GRANTED**.

I.    BACKGROUND

The Court elsewhere has detailed Plaintiffs' allegations and the relationships among the parties. (*See generally* Doc. 153). Relevant here, this lawsuit arises from damage to a bridge spanning the Scioto River in Columbus, Ohio, which Plaintiffs CSX Transportation, Inc. ("CSX") and Norfolk Southern Railway Company ("Norfolk Southern") own and maintain. (Doc. 70, ¶ 9). In the Amended Complaint, Plaintiffs assert claims against several entities for the cost of repairing the bridge. (*See generally* Doc. 70). Included among the Defendants is Cincinnati Insurance Company ("CIC"), which issued Railroad Protective Liability Insurance policies ("RPL") to Plaintiffs. (Doc. 70, ¶ 62–83). Specifically, Plaintiffs allege that CIC improperly breached the insurance policies by refusing to pay them. (*Id.*). Plaintiffs also have

sued Defendant Messer Construction Company ("Messer"). (Doc. 70, ¶ 28–57). Of note, CIC issued a General Commercial General Liability policy to Messer. (Doc. 159-1, Ex. D). Thus, Plaintiffs as well as Defendant Messer are CIC insureds.

Plaintiffs concede that there "was nothing improper regarding Defendant CIC's issuance of the RPL policies to the Railroads as well as the General Commercial General Liability Policy to Messer . . . ." (Doc. 159-1 at 3). Plaintiffs go on, however, to assert that "the handling of claims with respect to the distinct policies should have been kept separate, including conducting completely independent investigations." (*Id.*). Plaintiffs additionally represent that they only recently learned how CIC handled the claims. More specifically, Plaintiffs assert:

> in light of evidence recently produced in discovery which revealed that CIC has intentionally failed to process the Railroads' first party insurance claims under the RPL policies in good faith, and because CIC knowingly created and manipulated an obvious conflict of interest in its handling of the Railroads' first party claims and claims against Messer Construction Company, ("Messer"). Instead of mandating separate independent investigations for the Railroads' first-party claims and Messer's third-party claim, CIC and its consultant, Rail Services, Inc., ("RSI"), deliberately communicated and shared information learned from the Railroads with representatives of Messer and treated the competing claims as a single investigation, resulting in an investigation that was wholly inadequate and conducted in bad faith to CSX and Norfolk Southern.

(*Id.* at 2). In short, Plaintiffs seek to add a bad faith claim against CIC. Defendant CIC opposes this Motion (Doc. 170), and Plaintiffs have filed a reply in support (Doc. 176). The other Defendants either did not object to the amendment or did not weigh in. (*See* Doc. 159 at 2).

After Plaintiffs moved for leave to amend, Defendants asked this Court to extend the scheduling order in this case by six months. (Doc. 166). Plaintiffs partially opposed the Motion, asserting that a ninety-day extension is enough. (Doc. 169). Then, in Reply, Defendants averred that six months might not even be enough time. (Doc. 173).

2

## II. STANDARD

Two federal rules govern Plaintiffs' Motion for Leave to File Second Amended Complaint. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that when a party seeks leave of court to file an amended pleading, "[t]he court should freely give leave when justice so requires." This rule, which allows a liberal policy in favor of granting amendments, "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Finan. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). Thus, the trial court enjoys broad discretion in deciding motions for leave to amend. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising its discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

However, "[o]nce a pleading deadline has passed, litigants must meet the higher threshold for modifying a scheduling order found in Rule 16(b)." *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008); *see also Hill v. Banks*, 85 F. App'x 432, 433 (6th Cir. 2003) (stating that "once a scheduling order's deadline passes, a party must first show good cause under Rule 16(b) for the failure to seek leave to amend prior to the expiration of the deadline before a court will consider whether the amendment is proper under Rule 15(a)"). Accordingly, under Rule 16, the Court must evaluate whether good cause exists for Plaintiffs' failure to seek leave to amend within the deadline, while also considering "the potential

3

prejudice to the nonmovant." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003); *see also Vanburen v. Ohio Dep't of Pub. Safety*, No. 2:11-CV-1118, 2012 WL 5467526, at *2 (S.D. Ohio Nov. 9, 2012) ("even if an amendment would not prejudice the nonmoving party, a plaintiff must still provide good cause for failing to move to amend by the Court's deadline").

This Court has noted that "the touchstone of the good cause inquiry under Rule 16(b) is whether the moving party acted diligently in attempting to meet the deadline set forth in the pretrial order." *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-cv-0569, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007). Therefore, if Plaintiff cannot establish her diligence in trying to meet the deadline for the filing of an amended complaint, "it is immaterial whether the standards under Rule 15(a) can be met" because "[w]ithout a showing of diligence, the deadline in the Rule 16(b) order will not be extended, and without such an extension, a motion for leave to amend will be denied." *Id.*

As for Defendants' Joint Motion to Amend Scheduling Order (Doc. 166), Rule 16 again applies. Defendants must demonstrate good cause and diligence to extend the deadlines as requested. *See* Fed. R. Civ. Proc. 16(b)(4); *Leary*, 349 F.3d at 906.

## III. DISCUSSION

### A. Motion for Leave to Amend (Doc. 159)

In their Motion seeking amendment, Plaintiffs explain that two recently produced pieces of discovery support their bad faith claim against CIC—discovery received from CIC's consultant, Rail Services, Inc., ("RSI") and discovery from CIC received in early May 2018. (Doc. 159-1 at 5, 9). Taken together, Plaintiffs read these documents as showing, *inter alia*, improper cooperation between RSI and Defendant Messer with regard to Plaintiffs' pending

4

insurance claim. (*See, e.g.*, Doc. 159-1 at 14). Plaintiffs further aver that they did not have a firm basis for bringing a bad faith claim against CIC until they received this discovery in May of this year. Roughly one month after receiving this discovery, Plaintiffs filed the instant Motion. (*See* Doc. 159 (file June 11, 2018)).

Importantly, CIC does not dispute this timeline. Nor does it contend that Plaintiffs could have sought amendment sooner. Instead, CIC argues that the purpose of the Motion was to "gain a tactical advantage" at a mediation scheduled for June 12, 2018. In support, CIC notes that the instant Motion was filed on June 11, 2018—the day before the mediation. (Doc. 170 at 1). In other words, CIC finds Plaintiffs' timing suspect but does not claim that Plaintiffs could have sought amendment sooner.

This Court has noted time and again that the focus of the diligence question under Rule 16(b) is whether Plaintiff could reasonably have sought amendment prior to the deadline with the exercise of due diligence. *Stanich v. Hissong Grp., Inc.*, No. 2:09-CV-143, 2011 WL 1560650, at *4 (S.D. Ohio Apr. 25, 2011); *see also Ross v. Am. Red Cross*, No. 2:09-CV-00905, 2011 WL 13157179, at *1 (S.D. Ohio Aug. 30, 2011) (holding that a court must "adhere to the principle that [t]he party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines"). Based upon the undisputed chronology, the Court concludes that Plaintiffs could not have brought the amendment prior to the deadline. In addition, Plaintiffs explain the various discovery steps taken in this case. (Doc. 159-1 at 10). Considering all of this, the Court concludes that Plaintiffs have shown diligence.

"Another important consideration for . . . deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment."

5

*Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). Here, CIC asserts that allowing amendment would be prejudicial because such an addition "will require additional discovery and the retention of additional expert witnesses which to this date have yet to be retained," and "will require an extension of the current discovery cut off deadline." (Doc. 170 at 8). CIC does not, however, articulate what additional experts need to be retained or how retaining them would be "unduly prejudicial." *See Leary*, 349 F.3d at 909. As for extending the case schedule, CIC has joined Defendants' Motion to extend the deadlines in this matter. Thus, any extension consistent with Defendants' request is not prejudicial. In sum, Plaintiffs have established the good cause required for leave to amend under Rule 16(b).

Turning next to Rule 15(a), the Court finds that Plaintiffs have satisfied this standard as well. Specifically, the Court has considered such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman*, 371 U.S. at 182. As noted, CIC hints that Plaintiffs acted in bad faith by seeking leave to amend the day before the parties' scheduled mediation. (*See* Doc. 170 at 1). Perhaps it was a tactical decision to file the instant Motion before the mediation, but, as the timeline above shows, Plaintiffs could not have sought amendment much sooner. Stated differently, Plaintiffs did not delay in filing the Motion. Consequently, the Court concludes that Plaintiffs did not act in bad faith.

Finally, a word about futility. Defendant CIC argues that Plaintiffs' bad faith claim lacks merit, and, consequently, any amendment is futile. (*See generally* Doc. 170 at 3–8). "At this stage of the litigation, this Court is charged with determining whether the futility of an

amendment is so obvious that it should be disallowed." *Bear v. Delaware Cnty., Ohio*, No. 2:14-CV-43, 2015 WL 1954451, at *3 (S.D. Ohio Apr. 28, 2015). The proposed amendments here meet this low bar. In other words, the proposed amendments are not obviously futile. Moreover, CIC's futility argument would require the Court to address directly the merits of Plaintiffs' bad faith claim. "[T]he Court believes that it's the better exercise of discretion to permit the amendment," after which CIC may "raise their merits arguments" through a dispositive motion. *Id.* At that point, "the matter will then be subject to proper consideration by the District Judge." *Id.*

### B. Defendants' Joint Motion To Extend Scheduling Order (Doc. 166)

Defendants have moved to amend the scheduling order in this case. (Doc. 166). In their opening brief, Defendants sought to extend all current deadlines by roughly six months. (*Id.* at 5–6). Plaintiffs opposed the Motion only in part, asserting that a ninety-day extension is sufficient. (Doc. 169 at 1). Then, in Reply, Defendants noted that a six-month extension may not be enough. (Doc. 173 at 3).

Given the complexity of this case and the representations that the parties and counsel have worked diligently to complete discovery, the Defendants' Motion for a six-month extension is **GRANTED**. The Court finds, however, that despite Defendants' representations in Reply, a six-month extension is enough. Accordingly, the case schedule is amended as follows:

| | |
|---|---|
| Fact Discovery Deadline: | January 15, 2019 |
| Primary Expert Report Deadline: | March 1, 2019 |
| Rebuttal Report Deadline: | April 15, 2019 |
| Expert Discovery Deadline: | June 15, 2019 |
| Dispositive Motion Deadline: | July 15, 2019 |

Although the Motion is granted, the Court notes that this case has been pending for over two years, and the Court has a keen interest in efficient resolution of this matter. Consequently, the Court will be very reluctant to grant any further extensions. In addition, the parties must file an interim joint status report by October 31, 2018, detailing the outstanding discovery in this matter and the plan to complete it timely.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Amend Complaint (Doc. 159) and Defendants' Joint Motion to Amend Scheduling Order (Doc. 166) are **GRANTED.**

IT IS SO ORDERED.

Date: August 28, 2018                      /s/ Kimberly A. Jolson
                                                                    KIMBERLY A. JOLSON
                                                                    UNITED STATES MAGISTRATE JUDGE