**CSX TRANSPORTATION, INC, et. al.,**

        **Plaintiffs,**

    **v.**                            **Civil Action 2:16-cv-557**
                                           **Judge James L. Graham**
                                         **Magistrate Judge Jolson**


**COLUMBUS DOWNTOWN**
**DEVELOPMENT CORPORATION,**
**et al.,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs CSX Transportation, Inc.'s and Norfolk Southern Railway Company's ("Plaintiffs") Motion to Compel Discovery and the Privilege Log of Defendant Cincinnati Insurance Company ("CIC"). (Doc. 219). In this Order, the Court also addresses Plaintiffs' subsequent Motion to Compel Document Production from Defendant CIC and to Compel Depositions Testimony from David Cunningham, Aaron Tooley, and Jason Wolfe (Doc. 244) (the "Motions"), because it is related to and, in part, supplements the prior motion. Where appropriate, the Plaintiffs' and CIC's (the "parties'") substantive arguments will be addressed subsequent to this Order, as further explained below. For the reasons that follow, the Motions are **GRANTED** in part, **DENIED** in part, and **TAKEN UNDER ADVISEMENT** in part.

## I.    BACKGROUND

The Court elsewhere has detailed Plaintiffs' allegations and the relationships among the parties. (*See generally* Doc. 153). The following is relevant to this Motion.

Plaintiffs allege that discovery in this litigation has revealed that "CIC failed to reasonably process Plaintiffs['] claims and confirmed conflicts of interest in handling the claims." (Doc. 219-1 at 3). Upon this realization, Plaintiffs asserted bad faith claims against CIC for mishandling their respective claims. (Doc. 179). Plaintiffs argue that CIC's response to their discovery requests is deficient given their assertion of bad faith. (Doc. 219-1 at 3). Plaintiffs moved to compel certain discovery and, in the alternative, asked the Court to conduct an in camera review of specified documents. (Doc. 230). Plaintiffs' Reply Brief in Support of the Motion identifies the twelve discovery disputes before the Court:

1. Production of CIC000073-77;
2. Production of CIC001094;
3. Production of CIC001478;
4. Production of CIC001479;
5. Unredacted production of Norfolk Southern's claim file;
6. Records of all continuing education courses taken by Brad Zimmerman, David Cunningham, and Jennifer Hayes;
7. All records of CIC courses offered by CIC's education and training department for Brad Zimmerman, David Cunningham, and Jennifer Hayes;
8. Production of course or education materials prepared, maintained or used by CIC related to proper claims handling, policy or procedures, guidelines, instructions, determining coverages, and/or assessing damages;
9. All cost estimates prepared by Rail Services, Inc. ("RSI");
10. Supplementation of Plaintiffs' Interrogatory Nos. 29-32;
11. Supplementation of Plaintiffs' Request for Document Production No. 14;
12. All nonprivileged attorney/client communications as permitted by *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001).

(*Id.* at 2–3).

The Court issued an order denying in part, denying without prejudice in part, ordering the submission of certain documents for in camera review, and ordering the parties to meet and confer regarding certain documents. (*See generally* Doc. 231). Specifically, the Court ordered the following:

- Submit documents from disputes 1, 2, 3, 5 and 12 for in camera review;

- Meet and confer regarding disputes 4, 6, 7, 8 and part of 10;

- Deny the motion without prejudice as to dispute 9; and

- Deny the motion as to disputes 10 and 11.

(*Id.* at 11).

CIC represented on February 26, 2019, that counsel was "still assessing whether there are any documents responsive to dispute 12, and will provide [the Court] with a response by the March 5, 2019 deadline outlined in your order." CIC failed to send any documents or update the Court by the March 5, 2019 deadline. Accordingly, the Court finds this dispute is ripe for resolution.

After the first order, the Court inspected the documents from disputes 1, 2, 3, and 5 in camera, and ordered CIC to appear for an ex parte hearing to answer questions regarding the documents. The hearing was held on March 13, 2019. (Doc. 246).

As for the motion with regards to dispute 9, it was denied without prejudice (Doc. 231 at 11), but Plaintiffs subsequently renewed the request. (Doc. 244). Plaintiffs assert that their supplemental briefing on this dispute provides "the necessary context, articulate the need for the documents and refute CIC's unsupported assertion that RSI acted as a consulting expert." (Doc. 244-1 at 4). In this motion, Plaintiffs also ask the Court to compel deposition testimony of David Cunningham, Aaron Tooley, and Jason Wolfe. (*Id.* at 2).

The parties met and conferred regarding disputes 4, 6, 7, 8, and 10, and submitted a status report via email on February 27, 2019. Unfortunately, but not altogether unpredictably, the status report indicated nothing was resolved. At the ex parte hearing, the Court inquired about dispute 4, the "16-year history of Messer's losses and CIC's earned Premiums form Messer." Messer

opposed the motion to compel this information. (Doc. 227). The Court asked CIC's counsel to prepare an index, similar to a privilege log, of the disputed documents and granted counsel's request for thirty days to do so. Therefore, counsel is **ORDERED** to submit this document to the Court no later than April 12, 2019. All other disputes are ripe for resolution. In the interest of efficiency, and to facilitate the progression of discovery towards a much-anticipated termination, the Court issues the following order resolving the ripe disputes.

## II.    STANDARD

According to Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Determining the proper scope of discovery falls within the broad discretion of the trial court." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)).

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The moving party bears the burden of demonstrating relevance. *Gruenbaum*, 270 F.R.D. at 302 (citation omitted). "If the movant makes this showing, 'then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome.'" *Ball v. Kasich*, No. 2:16-CV-282, 2018 WL 6242230, at *3 (S.D. Ohio Nov. 29, 2018) (quoting *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017)).

## III.    DISCUSSION.

### A.  Disputes 1, 2 and 3: Attorney Client Privilege and Work-Product Doctrine

CIC argues the attorney client privilege and work-product doctrine shield CIC000073-77,

CIC001094, and CIC001478 from production.  (Doc. 228 at 14).

The attorney-client privilege protects against the disclosure of communications between an attorney and his or her client.  *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).  The Sixth Circuit Court of Appeals articulated the following test to determine whether a communication is privileged: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his [or her] insistence permanently protected (7) from disclosure by himself [or herself] or by the legal advisor, (8) unless the protection is waived." *Erickson v. Hocking Tech. Coll.*, 2:17-cv-360, 2018 U.S. Dist. LEXIS 50075, at *3 (S.D. Ohio Mar. 27, 2018) (citing *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998)).

"The burden of establishing the existence of the privilege rests with the person asserting it."  *Id.* (quoting *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)).  Simply asserting that information is privileged "is insufficient to meet the burden."  *Id.* (quoting *In re Trans-Indus., Inc.*, No. 1:10-MC-34, 2011 U.S. Dist. LEXIS 37910, at *10 (N.D. Ohio Mar. 28, 2011)).  Further, Rule 26 of the Federal Rules of Civil Procedure requires a party that seeks to withhold otherwise discoverable information on the basis of privilege to assert a claim of privilege and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).

To be privileged, communications between non-attorney corporate employees must be made in order to secure legal advice from counsel.  *Boltz v. Untied Process Controls*, 1:16-cv-703, 2017 U.S. Dist. LEXIS 102913, at *15 (S.D. Ohio June 23, 2017) (citing *Upjohn*, 449 U.S. at

394)); *see also Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 U.S. Dist. LEXIS 162013, at *22 (S.D. Ohio Nov. 13, 2012) ("[C]ommunications among non-lawyer corporate personnel are protected if the dominant intent is to prepare the information in order to get legal advice from the lawyer[.]") (internal citations omitted). To establish that a communication between two non-attorneys is protected under the attorney-client privilege, the party asserting privilege must prove that the "dominant intent" of the communication was to secure "legal advice from [a] lawyer." *See In re Behr Dayton Thermal Prods., LLC*, 298 F.R.D. 369, 375 (S.D. Ohio 2013) (further citations omitted).

The fact that information was later shared with counsel does not make it privileged. *Boltz*, 2017 U.S. Dist. LEXIS 102913, at *17 (citations omitted); *see also Neuder v. Battelle Pac. N.W. Nat'l Lab.*, 194 F.R.D. 298, 295 (D.D.C. 2000) ("[D]ocuments prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged since they are not communications made primarily for legal advice[.]"). "Where the evidence equally supports an inference that the communication either was, or was not, related to the subsequent request for legal advice, the court must rule in the challenging party's favor." *Id.* (quotations and citations omitted).

The work-product doctrine is codified in Rule 26(b)(3):

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

The Sixth Circuit has adopted the "because of" test to determine whether a document was prepared in anticipation of litigation. *Boltz*, 2017 U.S. Dist. LEXIS 102913, at *10. That test is: "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* (quoting *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). Accordingly, the party asserting work-product must "prove that anticipated litigation was the driving force" behind the preparation of the disputed document. *Id.* (citations omitted). If the document was created as part of the ordinary business of a party, and the ordinary business purpose was the "driving force" or impetus for creation of the document, then it is not protected by the work-product doctrine. *Id.* (citing *Roxworthy*, 457 F.3d at 595); *see also  Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2012 U.S. Dist. LEXIS 162013, at *12 (S.D. Ohio Nov. 13, 2012) ("Thus, we have held that materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3).") (further citations omitted).

### 1.  Dispute 1 (CIC000073-77)

CIC000073-77 is a portion of the claim file titled "Legal" with subheadings of Litigation Lit. Status Description (CIC000073), Legal Budget (CIC000074), Legal Subclaims (CIC000075), Legal Details (CIC000076), and Legal Participants (CIC000077). (Doc 228 at 16). The document

was created on June 27, 2016, seven days after the commencement of this case. The ex parte hearing clarified that this document is a print out of CIC's "computer claim note system," which is software used to create litigation budgets and communicate them with outside counsel. (Doc. 265 at 6). Brad Zimmerman inputted the information. (*Id.*).

Work-product shields this document from production. It was created because of CIC's subjective anticipation of litigation, as it is a litigation budget, and was created after the commencement of litigation. Further, the anticipation of litigation was objectively reasonable because the lawsuit was filed and ongoing. Therefore, it meets the two "because of" factors, *Roxworthy*, 457 F.3d at 594, and was not created in the ordinary course of business. The motion to compel an unredacted copy of CIC000073-77 is **DENIED**.

### 2. Dispute 2 (CIC001094)

CIC001094-96 is a string of emails between David Cunningham (CIC claims handler) and Jim Richards (CIC casualty associate manager), with Jay O'Hara (manager of CIC's recovery subrogation unit) carbon copied on the redacted email dated December 8, 2015 (the "email"). CIC redacted the text of the email in its entirety, asserting attorney-client and work-product privileges. Specifically, CIC's privilege log states the email was "on hiring counsel and legal strategy," and the privilege claimed is "[w]ork product and legal strategy." (Doc. 219-2 at 2). CIC's memorandum in opposition to the Motion told the Court the following:

> CIC001094 contains email correspondence between David Cunningham (CIC claims handler) and Jay O'Hara (CIC in-house counsel). Mr. O'Hara was appointed legal counsel on the file in anticipation of litigation on the CSX claim. Again, Mr. O'Hara and Mr. Cunningham's communication does not concern the claim administration of the CSX claim. Rather, it discusses the legal claim related to this matter and is protected by the work-product privilege.

(*Id.* at 17). The briefing is misleading in two ways. First, the email is not between Mr.

Cunningham and Mr. O'Hara, but a string of emails between Mr. Cunningham and Mr. Richards with Mr. O'Hara carbon copied on only one of the emails. Second, at the ex parte hearing, the Court was informed that Mr. O'Hara is not a lawyer, but instead the manager of CIC's recovery subrogation unit. (Doc. 265 at 13–14). Mr. O'Hara was assigned to the file when CIC began to look into pursuing subrogation for any payments it might make on behalf of CSX. (*Id.* at 14)

The attorney client privilege does not shield the email from production. The sender, Mr. Richards, is not seeking legal advice in the email. *See Reed*, 134 F.3d at 356. Neither the direct nor copied recipients, Mr. Richards and Mr. O'Hara, are professional legal advisors. *Id.* Moreover, even if one of the recipients were a "professional legal advisor," they were not "acting in their capacity as such" with regards to the email. Instead, they are acting in a business capacity in discussing subrogation regarding CSX's policy. The Court need not consider the remaining *Reed* requirements because the email fails the first two.

Nor is the email work product. "[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). The "because of" test determines whether a document was prepared in anticipation of litigation: "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Boltz*, 2017 U.S. Dist. LEXIS 102913, at *10 (quoting *Roxworthy*, 457 F.3d at 594). CIC has failed to prove that anticipated litigation was the driving force behind the preparation of the disputed document. *See id.* This is because the email discusses business considerations including pursuing subrogation should CIC have to pay out on CSX's policy. (Doc. 265 at 14). This is part of CIC's ordinary

business.  Further, the content of the email has nothing to do with the litigation between CIC and

CSX because it had not yet commenced and, as discussed below with respect to disputed 5 and 12,

CIC did not anticipate litigation until the complaint (Doc. 1) was filed on June 20, 2016.  Therefore,

the email fails the "because of" test and is not shielded from production by the work-product

doctrine.

As the email is not protected by any asserted privilege, the Motion is **GRANTED** and CIC

is **ORDERED** to produce an unredacted copy within five days of the entry of this order.

### 3.  Dispute 3 (CIC001478)

CIC001478 is a one-page document titled "Large Loss Review" and dated January 7, 2016.

At the hearing, counsel for CIC and representative Brad Zimmerman described it as a "reserve

increase memorandum," which is a document created whenever a claim crosses the $250,000

threshold.  (Doc. 265 at 15).  CIC redacted the "Management Comments" section, in which Mark

Wietmarschen, a manager on CIC's large accounts unit, wrote three sentences.  (Doc. 265 at 16).

The purpose of the "Management Comments" section is to make "some general comments that

would get passed up to probably upper management so that they understand what this reserve

increase or what this large reserve consists of."  (*Id.*).  The gist of the redacted section is that

management predicts they will be able to mitigate CSX's losses by seeking subrogation from other

parties at fault.  (*Id.* at 17).  Mr. Wietmarschen is not a lawyer, nor is Truitt Graue, the underwriter

on the file, whose name also appears on the document.  (*Id.* at 16).  CIC's memorandum in

opposition states that "CIC001478 is documentation prepared by CIC after an attorney ha[d] been

assigned to this matter, in anticipation of litigation."  (*Id.*).

The "Management Comments" section is not shielded from production by the attorney-

client privilege. The drafter, Mr. Wietmarschen, is not seeking legal advice. *See Reed*, 134 F.3d at 356. No evidence has been presented showing that a legal professional was the intended audience of the reserve increase memorandum or specifically the "Management Comments" section. The impetus behind creating the document was a business procedure requiring its creation when a certain financial threshold is exceeded. (Doc. 265 at 15). The "Management Comment" section was drafted by a non-lawyer for a business audience. (*Id.*). On its face, it does not seek legal advice. *See Reed*, 134 F.3d at 356. Given this, the Court need not consider the remaining *Reed* requirements because the email fails the first three.

Nor is the "Management Comments" section work product. If a document is created in the ordinary course of business, and an ordinary business purpose was the "driving force" behind creation of the document, then it is not protected by the work-product doctrine. *Boltz*, 2017 U.S. Dist. LEXIS 102913, at *10 (citing *Roxworthy*, 457 F.3d at 595). As explained above, CIC001478 was created due to business procedures and for a business audience. This document was not created "because of" anticipated litigation; it was drafted more than five months prior to CIC's first anticipation of litigation against Plaintiffs—the date the complaint was filed. Accordingly, CIC has failed to prove anticipated litigation was the driving force behind the creation of any part of CIC001478.

As CIC001478 is not protected by any asserted privilege, the Motion is **GRANTED** and CIC is **ORDERED** to produce an unredacted copy within seven days to the entry of this order.

### B. Disputes 5 and 12: *Boone v. Vanliner Ins. Co.*, 744 N.E. 2d 154 (Ohio 2001)

Plaintiffs argue that CIC has improperly asserted attorney-client privilege to avoid producing an unredacted copy of Norfolk Southern's claim file and all nonprivileged attorney-

client communications as permitted by *Boone*.  CIC argues that communications and information related to its defense in this litigation are protected and not subject to production under *Boone*.

In *Boone*, the Supreme Court of Ohio described the issue before it as whether "in an action alleging bad faith denial of insurance coverage, the insured is entitled to obtain, through discovery, claims file documents containing attorney-client communications and work-product that may cast light on whether the denial was made in bad faith." *William Powell Co. v. OneBeacon Ins. Co.*, 1:14-cv-807, 2017 WL 3927525, at *1–2 (S.D. Ohio June 21, 2017) (quoting *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154, 156 (Ohio 2001)).  The Supreme Court of Ohio held that such documents were subject to production in the following circumstance:

> [I]n an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage. At that stage of the claims handling, the claims file materials will not contain work product, i.e., things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists.

*Boone*, 744 N.E.2d at 158.

Nothing in *Boone*, nor subsequent revisions to the Ohio Code, require a prima facie showing of bad faith; "rather, the exception applies if the documents predating the denial of coverage *may* cast light on the bad faith claim." *William Powell Co.*, 2017 WL 3927525, at *3 (emphasis in original); *see also Boone*, 774 N.E.2d at 158 ("[T]he insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage."); *In re Prof'l Direct Ins. Co.*, 578 F.3d 432, 442 (6th Cir. 2009)  (stating that *Boone* can be read broadly and can be interpreted to allowing discovery between an insurer and its attorney whenever the insured alleges bad faith).  In a

previous order (Doc. 231), the Court denied CIC's argument that a subsequent revision to the Ohio Code disrupts the application of *Boone* to the instant disputes.

At the *ex parte* hearing, the Court inquired as to the date in which CIC first anticipated litigation against Plaintiffs. CIC stated that while it knew litigation was always a possibility, this lawsuit was filed before CIC's review process time period ended and it was "surprised" by the filing. (Doc. 265 at 3, 4). Counsel for CIC stated that CIC first anticipated litigation "the date [Plaintiffs] filed the lawsuit." (*Id.* at 5).

To resolve many of the discovery disputes, the Court must determine when CIC first anticipated litigation and, relatedly, a "constructive denial date" of Plaintiffs' insurance claims. *See In re Professional Direct Ins. Co.*, 578 at 442 (holding the trial court had authority to select a "constructive denial date" on the day the insurer notified the insured that it would seek declaratory judgment that its claim was not covered). Under the facts of this case and CIC's representations at the *ex parte* hearing, the Court finds that CIC first anticipated litigation on June 20, 2016, the day the complaint (Doc. 1) was filed. Further, this is also an appropriate "constructive denial date" for purposes of the *Boone* exception. *See id.* ("The magistrate took a practical approach [to the issue of no denial date], asking at what point [the insurer] decided it would not cover the [insured's] claim.").

## 1. Dispute 5 (Unredacted Copy of Norfolk Southern Claim File)

The Court inquired as to the contents of the Norfolk Southern Claim File at the ex parte hearing. CIC informed the Court that the file contains everything that had transpired since Norfolk Southern submitted its claim. (Doc. 265 at 19–20). However, this was not until after the instant litigation had begun. (*Id.*). For this reason, CIC represents that most, if not all, of the file postdates

the commencement of litigation.  (*Id.*).

To the extent that there are documents created before the commencement of litigation, June 20, 2016—which the Court finds to be the "constructive denial date" for purposes of *Boone*— Plaintiffs are entitled to their production.  Accordingly, Plaintiffs are entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to June 20, 2016.  CIC is **ORDERED** to produce such documents within seven days of the entry of this order.

### 2. Dispute 12 (All non-privileged attorney-client communication as permitted by *Boone*)

As noted previously, CIC represented to the Court that counsel was "still assessing whether there are any documents responsive to Dispute 12, and will provide you with a response by the March 5, 2019 deadline outlined in your order."  But CIC failed to send any documents or notify the Court that no responsive documents were located.  Under *Boone*, Plaintiffs are "entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to denial of coverage."  744 N.E.2d at 158.  As explained above, in this case the Court must select a "constructive denial date," which is the date the complaint was filed.  It is unclear whether responsive documents exist.  But, to the extend they do, CIC is **ORDERED** to produce all claims file materials containing attorney-client communications related to the issue of coverage that were created prior to June 20, 2016, within seven days of the entry of this order.

### C.  Disputes 6, 7 and 8.

Plaintiffs next argue that CIC must produce the following responsive documents:

6) Records of all continuing education courses taken by Brad Zimmerman, David

14

Cunningham, and Jennifer Hayes;

7) All records of CIC courses offered by CIC's education and training department for Brad Zimmerman, David Cunningham, and Jennifer Hayes;

8) Production of course or education materials prepared, maintained or used by CIC related to proper claims handling, policy or procedures, guidelines, instructions, determining coverages, and/or assessing damages.

(Doc. 219-1 at 11). CIC argues Plaintiffs' request to compel is improper because Plaintiffs failed to request these documents in the regular course of discovery. (*Id.* at 26) (citing *McDermott v. Continental Airlines, Inc.,* 339 Fed. App'x 552, 560 (6th Cir. 2009) (citing *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1310 (3rd Cir. 1995) ("'[A] party must first prove that it sought discovery from its opponent to succeed on a motion to compel."))). Therefore, the Court will determine whether Plaintiffs sought documents responsive to Disputes 6, 7, and 8 in discovery.

Plaintiffs maintain that the disputed documents were requested under Request for Production No. 14 ("RFP 14"), which asked for:

Full and complete copies of any manuals, policies, procedures, handbooks, guidelines, and/or other documents prepared, maintained, and/or used by CIC relating to processing, investigating, and/or determining coverage claims submitted to CIC.

Plaintiffs' interpretation of RFP 14 is too broad. The Court finds RFP 14 does not request "[r]ecords of all continuing education courses taken by Brad Zimmerman, David Cunningham, and Jennifer Hayes," "all continuing education courses," and "all records of CIC courses offered by CIC's education and training department." Accordingly, the Motion with regards to dispute 6 and 7 is **DENIED**.

The Court, however, finds that RFP 14 does ask for the materials in dispute 8. Although RFP 14 does not include the term "educational materials," this is implied by "manuals, policies,

procedures, handbooks, guidelines, and/or other documents prepared, maintained, and/or used by CIC relating to processing, investigating, and/or determining coverage claims submitted to CIC." Accordingly, the Motion is **GRANTED** with regards to disputes 8, and CIC is **ORDERED** to produce any responsive documents within five days of the entry of this order.

### D. Dispute 9 (All Cost Estimates Prepared by RSI) and Deposition Testimony of Aaron Tooley and Jason Wolfe

The outcome of these three disputes hinges upon whether they were 1) prepared by RSI as consultants for CIC in its processing of Plaintiffs' insurance claims, or 2) prepared by RSI as experts in anticipation of litigation. The facts before the Court weigh in favor of the former.

The Court previously denied this motion as to dispute 9 without prejudice because Plaintiff failed to discuss the document in their prior briefing, and the Court was skeptical that compelling the cost estimates may be premature given the deadline for rebuttal expert reports had not yet passed. (Doc. 231 at 9). Plaintiff has, however, provided the Court with a clear picture in its subsequent briefing, and the dispute is ripe for resolution.

Aaron Tooley was an employee of RSI during the relevant time frame and coordinated the damages investigation. (Doc. 258 at 5). Jason Wolfe of Forsgren was retained by RSI to complete the expert analysis of damages. (*Id.*). CIC retained RSI, after it was first notified of a potential claim, to provide it with an assessment of the damages claimed by CSX related to the project. (*Id.* at 4). RSI completed two initial cost estimates for CIC before litigation commenced. (*Id.*). CIC represents that both of the pre-litigation cost estimates were incomplete due to CSX's failure to provide full information related to its alleged damages. (*Id.*). CIC has provided both of the pre-litigation cost estimates to Plaintiffs. (*Id.*).

Jason Wolfe prepared a subsequent cost estimate report related to Plaintiffs' first party

claim after receiving additional cost information, and CIC has withheld this document and refused to allow Wolfe to testify about this report, or anything else after June 2016. (Doc. 244-1 at 5). CIC states, without support or citation, that "[a]fter litigation began, RSI continued its work for CIC in an expert capacity related to the damages alleged by CSX and NS as part of this litigation." (*Id.*). Due to this assertion, CIC claims that all post-litigation work completed by RSI is protected by the work-product privilege. (*Id.* at 4–5). Plaintiffs argue the cost estimates and witness testimony may cast light on CIC's mishandling of Plaintiffs' claims and whether CIC was reasonably justified in failing to pay or process the claims. (Doc. 244-1 at 6).

CIC first argues that Plaintiffs' Motion to Compel filed March 1, 2019, should be denied in its entirety due to Plaintiffs' failure to comply with the meet and confer requirements of Rule 37 of the Federal Rules of Civil Procedure and Southern District of Ohio Local Rule 37.1. (Doc. 258 at 5–8). Rules 26(c)(1) and 37(a)(1) require that the parties meet and confer in good faith. This requirement "requires counsel to communicate in good faith with each other—via telephone, letter correspondence, or email—to attempt to resolve any discovery disputes prior to the filing of a motion to compel." *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 464 (S.D. Ohio 2015). Movant is not required to file a separate document to certify compliance with the meet and confer rules. *See Harris v. Sowers*, 2:16-cv-888, 2019 U.S. Dist. LEXIS 30889, at *1 (S.D. Ohio Feb. 27, 2019) (Finding the meet and confer requirement of Rule 37(a)(1) was satisfied where movant sent a letter containing the discovery requests but received no response.). Plaintiffs stated the following in its opening memorandum:

> In addition to prior conferences between Plaintiffs' counsel and counsel for CIC (including discourse between the parties during the depositions), Plaintiffs submitted a correspondence to CIC, copying Tooley and Wolfe, on February 27, 2019, and followed up with a telephone call on March 1, 2019 (left message) in a

good faith effort to resolve the outstanding discovery deficiencies, but CIC has failed to respond.

(Doc. 244-1 at 3).

CIC notes that Plaintiffs waited fifty days after David Cunningham's deposition, and forty-eight days after Aaron Tooley and Jason Wolfe's depositions, to issue its February 27, 2019 correspondence regarding CIC's alleged discovery deficiencies. (Doc. 268 at 6). This correspondence was sent two days before the discovery deadline. (*Id.*). On March 1, 2019, counsel for Plaintiffs left a voicemail for CIC's counsel at 2:15 p.m. and filed the Motion to Compel less than four hours later. (*Id.*). CIC emphasizes that the parties met and conferred on February 25, 2019, but Plaintiffs' failed to raise any of the issues outlined in their February 27, 2019 correspondence at the meeting. (*Id.* at 7).

The Court is troubled by Plaintiffs' conduct in both failing to raise the disputes closer to the completion of the relevant depositions and failing to discuss the disputes at the February 25, 2019 meeting. However, CIC indicated it would not waiver on its assertion of privilege regarding dispute 9, as it fully briefed the issue in its opposition to the previous order. (*See* Doc. 228 at 27–28). Further, CIC's counsel objected to questioning at the disputed depositions despite Plaintiffs' threats of filing a motion to compel. (See Docs. 244-3, 244-4, 244-5). Under the present circumstances, the Court finds Plaintiffs have satisfied the meet and confer requirement and will consider the Motion to Compel (Doc. 244).

### 1. Dispute 9 (Cost Estimates Prepared by RSI)

Plaintiffs argue that the cost estimates "prepared by RSI and/or Forsgren must be produced . . . because they may cast light on whether CIC handled [Plaintiffs'] first party claims in bad faith by not reasonably considering evidence to arrive at a claim determination." (Doc. 244-

1 at 5).  Plaintiffs argue that CIC's possession of these cost estimates is "a key fact in determining if CIC met the standards of a reasoned analysis of claim data to arrive at a claim determination" and "may show that CIC lacked a reasonable justification for failing to pay Plaintiffs' claims, failed to conduct any reasonable investigations with respect to the cost estimates, and/or dragging its feet with respect to their first party claims." (*Id.*).  CIC responds that the "draft reports completed by RSI after litigation began are protected under FRCP 26."  (Doc. 258 at 4).  Specifically, during Mr. Wolfe's deposition, counsel for CIC stated that Mr. Wolfe's "cost analysis are part of the expert reports that [CIC is] using at trial.  Since litigation started . . . shortly after this report was rendered, any draft reports that he has issued after that to [CIC] and us as counsel are draft reports not discoverable by [Plaintiffs]."  (*Id.*).

CIC's basis for withholding the cost estimates is Rule 26(b)(4) of the Federal Rules of Civil Procedure.  The Rule states that Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure, regardless of the form in which the draft is recorded.  Fed. R. Civ. P. 26 (b)(4)(B). Rules 26(b)(3)(A) and (B) pertain to the work-product privilege.  For material to be protected by Rule 26(b)(3)(A), it must have been "prepared in anticipation of litigation."  The two-factor "because of" test determines whether a document was prepared in anticipation of litigation: "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Boltz*, 2017 U.S. Dist. LEXIS 102913, at *10 (quoting *Roxworthy*, 457 F.3d at 594).  To determine a party's subjective intent, the Court must evaluate whether the anticipation of litigation, as opposed to an ordinary business purpose, was "the driving force behind the preparation of each requested document."  *Id.* (citing *Graff*, 2012 U.S. Dist.

LEXIS 162013, at *10.

Here, the facts do not support a finding that the cost estimates were prepared because of CIC's subjective anticipation of litigation. It should first be noted that the commencement of litigation did not alleviate CIC of its duty to process Plaintiffs' insurance claims in good faith. *See Valley Force Ins. Co. v. Fisher Klosterman, Inc.*, No. 1:14-cv-792, 2106 U.S. Dist. LEXIS 55485, at *33 (S.D. Ohio Apr. 26, 2016) ([T]he insurer still retains a duty to act in good faith towards the insured in the handling of its claim, even though they now are adversaries in the litigation process."); *see also Spadafore v. Blue Shield*, 486 N.E.2d 1201, 1204 (10th Dist. Ohio 1985) ("[E]vidence of the breach of the insurer's duty to exercise good faith occurring after the time of filing suit is relevant so long as the evidence related to the bad faith or handling or refusal to pay the claim[.]"). Insurers owe their insured the duty of good faith and fair dealing, which requires that the insurer timely process and investigate claims to resolve the claims. *Hackney v. Stonebridge Life Ins. Co.*, No. 2:14-cv-1216, 2016 U.S. Dist. LEXIS 65586, at *3–4 (S.D. Ohio Feb. 29, 2016) ("[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.") (quoting *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994)) (further citations omitted).

It is undisputed that CIC originally engaged RSI to prepare cost estimates in order to process CSX's insurance claim. (Doc. 268 at 4). CIC processes insurance claims in its ordinary course of business. CIC produced all cost estimates completed by RSI prior to the commencement of this litigation. (*Id.*). CIC has failed to put forth any evidence showing that its relationship with RSI, Mr. Wolfe, or Mr. Tooley changed in any way after the commencement of litigation. There

is no evidence that the cost estimates created after litigation commenced are different in any way than the pre-litigation estimates that have been produced. Even if CIC anticipated litigation on the day the complaint was filed, it does not necessarily follow that RSI and its affiliates immediately became experts engaged in anticipation of litigation. The facts show that RSI, Mr. Wolfe, and Mr. Tooley were engaged by CIC to generate cost estimates for an ordinary business purpose and CIC has failed to identify any facts proving anticipated litigation was in fact the driving force.

Moreover, even if the cost estimates were work product, the Court concludes that they would be discoverable under Rule 26(b)(3)(A). That rule allows materials shielded by work-product privilege to be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that is has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A). First, CIC has not argued that the cost estimates are not relevant to the claims or defenses or disproportional to the needs to this case. Second, Plaintiffs cannot obtain their substantial equivalent. For Plaintiffs' bad faith claims, the relevance of the cost estimates is the information CIC relied upon in making or failing to make a coverage determination. A cost estimate performed by a different expert retained by Plaintiffs cannot serve as a substitute. As such, if the cost estimates were privileged, the exception would apply, and CIC would still have to produce them. Accordingly, the Plaintiffs' motion to compel the cost estimates prepared by RSI is **GRANTED** and CIC is **ORDERED** to produce any responsive documents within five days of the entry of this order.

2. Aaron Tooley and Jason Wolfe and Deposition Testimony

In the next dispute, CIC argues attorney-expert privilege protects certain testimony of Mr.

Tooley and Mr. Wolfe. CIC relies on Rule 26(b)(4)(C) for its assertion that "Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under 26(a)(2)(B), regardless of the form of the communications . . . ." Fed. R. Civ P. 26(b)(4)(C). Again, for material to be protected by Rule 26(b)(3)(A), it must have been "prepared in anticipation of litigation." As CIC has not established that the reports themselves were produced in anticipation of litigation, it cannot establish that Mr. Tooley and Mr. Wolfe were engaged to prepare the reports in anticipation of litigation. What is more, the deponents themselves answered that they were not serving as experts. (Doc. 244-4 at 7; Doc. 244-5 at 3–4). No privilege protects the deposition testimony of Mr. Tooley and Mr. Wolfe, and CIC improperly instructed these deponents not to answer certain questions.

Mr. Tooley's testimony regarding his deposition preparation with counsel for CIC is therefore discoverable. Similarly, Mr. Wolfe's testimony regarding his deposition preparation is also discoverable. In Mr. Wolfe's deposition, counsel for CIC also objected to numerous questions regarding the information upon which he relied to create the cost estimates. (*See* Doc. 244-5). The Court notes that, even if he were an expert retained to prepare a report in anticipation of litigation, these questions would be fair game. The Court can think of no basis for objecting to this line of questioning, and indeed CIC's counsel fails to provide any. (*See id.*). If these questions, that regard documents relied upon in creating the cost estimates, were determined to be work product, they would fall into the exception for communications that "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(ii). Accordingly, Plaintiffs' motion to compel deposition testimony from Aaron Tooley and Jason Wolfe is **GRANTED**.

Plaintiffs further move for the depositions of Tooley and Wolfe to be compelled at the expense of CIC. "A court has discretion in determining an appropriate sanction under Rule 37." *Harris v. Sowers*, 2:16-cv-888, 2019 U.S. Dist. LEXIS 30889, at *6 (S.D. Ohio Feb. 27, 2019). Due to Plaintiffs' questionable meet and confer tactics, their request to compel the depositions of Tooley and Wolfe at CIC's expense is **DENIED**. *Cf.* Fed. R. Civ. P. 37(a)(5)(i) ("[T]he court must not order this payment if: (ii) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action[.]").

### E. Dispute 10 (Supplementation of Interrogatory No. 29)

Plaintiffs seek to compel Supplementation of Plaintiffs' Interrogatory No. 29. The parties' status report following the order to meet and confer (Doc. 231) reads as follows:

> Plaintiffs' Interrogatory No. 29 requested that CIC identify which individuals identified by CIC in response to Interrogatory No. 27 (relating to Plaintiffs' claims) also worked on the Messer claim. CIC argues that it cannot provide that information without reviewing the Messer claim file. CIC asserts that the representatives within CIC that are addressing the claims filed by Plaintiffs against CIC are not the claim representatives that are handling the claim brought against Messer. These are separate people and there are separate claim files for the separate claims. While CIC has the information in its corporate records, its position is that the requested information is not immediately available to the CIC representatives handling the defense of the claims Plaintiffs have asserted against CIC. CIC claims that reviewing the Messer claims file without an order from the Court might be argued to further the alleged bad faith claim asserted by Plaintiffs. Plaintiffs' position is that CIC has the responsive information in its possession, custody, or control but is refusing to produce it. As such, the parties are at an impasse which cannot be resolved without judicial intervention.

The Court finds that the supplementation of Plaintiffs' Interrogatory No. 29 is relevant to Plaintiffs' bad faith claims. *See* Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). Accordingly, the Motion is **GRANTED** with regard to Dispute 10,

supplementation of Interrogatory No. 29. and CIC is **ORDERED** to supplement within seven days of the entry of this order.

### F. Deposition Testimony of David Cunningham

David Cunningham was the CIC claim representative that originally handled the property loss claim submitted by CSX. (Doc. 258 at 14). At the same time, Mr. Cunningham was handling the third-party liability claim alleged against Messer Construction Co.—a named defendant in this lawsuit—related to the same project. (*Id.* at 15). At some point after CSX reported the settlement of the bridge to Messer and various other parties, Jane Lynch of Green & Green was hired as Messer's legal counsel to defend against CSX's claim. (*Id.*). Mr. Cunningham's focus was to determine the scope and amount of damages sustained by CSX, and he did not believe a conflict existed in his handling of the Messer claim until he determined there might be an issue with the cause of the bridge settlement. (*Id.* at 14–15). Upon this realization in January 2019, Mr. Cunningham transferred the CSX file to a new claim representative. (*Id.* at 15). But before he transferred the CSX file, Mr. Cunningham had conversations with Attorney Lynch. (*Id.*). Plaintiffs now move to compel Mr. Cunningham's testimony regarding the substance of those conversations with Attorney Lynch. (Doc. 244-1 at 7–8).

Messer asserts that attorney-client privilege protects the conversations between Mr. Cunningham and Attorney Lynch. (Doc. 255). Plaintiffs argue the *Boone* exception applies because "no such privilege exists with respects to documents or information that may cast light on CIC's bad faith handling of Plaintiffs' claims." (Doc. 244-1 at 7). The substance of Mr. Cunningham's conversations with Attorney Lynch, however, cannot cast light on CIC's bad faith handling of Plaintiffs' claims because Plaintiffs were never discussed.

Mr. Cunningham testified that his conversations with Attorney Lynch related to the Messer claim and that none of his conversations with Attorney Lynch related to the CSX claim.[1] (Doc. 258-4 at 3). Specifically, Mr. Cunningham stated the following: "My conversations with Jane did not bring in the railroad protective policy." (*Id.*). He went on to say that "any conversations with Green & Green was regarding finding out who the parties were downstream that may have culpability in this case." (*Id.* at 5–6). Further, Mr. Cunningham agreed that his conversations with Attorney Lynch did not concern anything other than the third-party liability claim against Messer. (*Id.*).

Messer submitted a Memorandum in Opposition to Plaintiffs' instant Motion to Compel Additional Deposition Testimony from Mr. Cunningham. (Doc. 255). This briefing, signed by Attorney Lynch, cites to Mr. Cunningham's testimony "that his conversations with counsel for Messer related solely to Messer's third-party liability claim and he never had any discussions whatsoever with counsel for Messer regarding Plaintiffs' first party damages claim." (Doc. 255 at 2). Under Rule 11(b)(3) of the Federal Rules of Civil Procedure, by signing the motion, Attorney Lynch represents to the Court that the factual contentions have evidentiary support. Further, Attorney Lynch has an ethical duty of candor with the Court. If Attorney Lynch did have conversations with Mr. Cunningham regarding Plaintiffs before the CSX file was transferred, she would not have signed the memorandum in opposition.

Communications between an insurance company and counsel retained by the company to defend an insured are privileged and not subject to disclosure in discovery. *See Kerner v. Terminix Int'l Co.*, No. 2:40-cv-0735, 2008 US. Dist. LEXIS 107022, at *7–9 (S.D. Ohio Jan. 31, 2008).

---

[1] During the time that Mr. Cunningham was working on these claims, Plaintiff Norfolk Southern had not yet submitted a claim with CIC. (Doc. 258 at 14).

Communications between Mr. Cunningham and Attorney Lynch related to Messer's third-party claim, meaning they were legal advice, sought from an attorney in her capacity as such, relating to representation made in confidence, and the privilege is being asserted by Messer. The *Reed* factors, therefore, are satisfied. *See Reed*, 134 F.3d at 356.

Under the facts of this dispute, the Court need not reach the question of whether the *Boone* exception to attorney-client privilege applies in this circumstance. If Mr. Cunningham's conversations with Messer's counsel did not mention Plaintiffs and related solely to Messer's third-party liability claim, then these conversations could not be evidence of CIC's bad faith processing of Plaintiffs' claims. The Motion to Compel Additional Deposition Testimony from Mr. Cunningham is therefore **DENIED**.

## IV. CONCLUSION

The Court's Order is summarized as follows:

- The Motion is **DENIED** as to dispute 1.

- The Motion is **GRANTED** as to disputes 2 and 3.

- The Motion is **GRANTED** as to disputes 5 and 12.

- The Motion is **DENIED** as to disputes 6 and 7.

- The Motion is **GRANTED** as to dispute 8.

- The Motion is **GRANTED** as to dispute 9 and compelling the deposition testimony of Aaron Tooley and Jason Wolfe.

- The Motion is **GRANTED** as to supplementation of Interrogatory 29.

- The Motion is **DENIED** as to compelling the deposition testimony of David Cunningham.

Unless stated otherwise, CIC is granted seven days to supplement its production with regard to the disputes in which this Opinion and Order compels production.

IT IS SO ORDERED.

Date: April 5, 2019                    /s/ Kimberly A. Jolson
                                       KIMBERLY A. JOLSON
                                       UNITED STATES MAGISTRATE JUDGE